IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DWAYNE D. BACON | : | |
| Plaintiff | : | |
| v. | : | Civil Action No. AW-06-2454 |
| MR. THORNE, *et al.* | : | |
| Defendants | : | |

o0o

## MEMORANDUM

Pending in this civil rights case is Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 18. Plaintiff has filed an opposition to the motion. Paper No. 20. Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

Background

Plaintiff alleges that on November 15, 2005, while incarcerated at Eastern Correctional Institution (ECI), he began to "sense danger" from his cell mate, Michael White. Paper No. 1 at p. 4. At the time Plaintiff states he was on bed rest after having surgery.[1] *Id.* He claims he wrote a request slip to Lt. Coulbourne, Lt. Thorne and Major King asking to be moved and stating that he could feel danger coming in his direction. *Id.* He alleges these request slips were ignored, but he continued to put request slips in the mailbox every couple of days. *Id*

Plaintiff states that in the beginning of December, 2005, he wrote to Major King about missing property and on December 7, 2005, spoke with Lt. Coulbourne about his situation. *Id*. at

---

[1] Plaintiff was assaulted by another inmate in October, 2005, and suffered fractured facial bones as a result of the assault. *See Bacon v. State of Maryland, et al.* Civ. Action No. AW-06-261 (D. Md).

p. 5. Plaintiff alleges he told Coulbourne that he was "in the middle of confusion" and Coulbourne responded, "you will be okay; just keep your head up." *Id*. Plaintiff states that after he got his property and returned to his cell, his cell mate began trying to coerce him into moving into another cell with an inmate known as "Ill Will" who had been incarcerated for 28 years and had proclaimed love for Plaintiff. *Id*. Plaintiff states he refused to move and told his cell mate that he was not homosexual. *Id*. Plaintiff enlisted the help of an inmate from another housing unit, Earl Carmichael-El, whom he alleges attempted to convince other inmates in Plaintiff's housing unit to protect him since he had just come out of the infirmary. *Id*. Plaintiff claims, however, that the information concerning his health was exploited by "gang members and freaks" to sexually harass him. *Id*.

Plaintiff claims in mid-January 2006, he spoke with Lt. Thorne who is in charge of housing unit 8. *Id*. Plaintiff asked Thorne to move him to another tier where "I know that people won't hurt me." *Id*. Plaintiff claims Thorne responded by telling him "he would see what he could do." *Id*. Approximately two weeks later, Plaintiff states his cell mate went on lock-up and another inmate, Terrance Gaines, was assigned to Plaintiff's cell. *Id*. Plaintiff claims that Gaines began asking him for oral sex moments after his arrival. *Id*. at pp. 5– 6. Plaintiff rebuffed his advances, told Gaines he was not gay, and claims Gaines seemed surprised. *Id*.

Plaintiff claims he wrote to Coulbourne, Thorne, King, and Warden Green about Gaines' advances, but no one responded. *Id*. He alleges that Gaines requested sex from Plaintiff on a daily basis. *Id*. Plaintiff claims he kept writing letters demanding to be moved to another cell and explaining that he was physically vulnerable because his facial bones were still fractured and he had double-vision and suffered balance problems. *Id*. at p. 6. No responses were received.

Plaintiff asserts that because he would not "kick out anything sexually" to him, Gaines paid another inmate, Mike Jones, "raw dope" to punch him in the face. *Id*. Plaintiff claims on March 8, 2006, after dinner, Jones hit him on the right temple while Plaintiff was waiting for the door to his cell to open. *Id*. Plaintiff states the force of the blow made him fall to the floor. After standing up he rushed to the front of the tier. *Id*. Upon returning to his cell, Gaines was laughing and told Plaintiff "you might as well kick that butt out. Nobody's going to help you." *Id*. Plaintiff told Gaines he wanted him to move out or he was going to tell an officer about him; the next morning Gaines moved to the next cell. Plaintiff claims the harassment continued even though Gaines was no longer his cell mate.

On March 23, 2006, Plaintiff was interviewed by Major King who took pictures of him and noted his name in a book as a member of the Bloods gang. *Id*. at pp. 6–7. On April 23, 2006, at approximately 9:00 p.m. Plaintiff was assaulted by five gang members. *Id*. at p. 7. Plaintiff was beaten and stabbed 3 times, requiring an emergency trip to the hospital where it was discovered that Plaintiff had broken facial bones. *Id*. Plaintiff states stab wounds to his back were sutured with staples and he was provided with prescription medications at the hospital. *Id*. He claims he did not receive the medication once he was returned to ECI, and he was put on lock-up, where his requests for medical attention were ignored. *Id*. He claims Thorne came to see him and promised he would never be placed on the same tier with his assailants again. *Id*. On May 12, 2006, Plaintiff states the staples were removed from his back. He was transferred to another prison on May 25, 2006. *Id*. He states that medical staff told him they could not fix the fractured bones in his face or give him anything for pain. *Id*.

3

Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

>    judgment motion may properly be made in reliance solely on the
>    "pleadings, depositions, answers to interrogatories, and admissions
>    on file." Such a motion, whether or not accompanied by affidavits,
>    will be "made and supported as provided in this rule," and Rule
>    56(e) therefore requires the nonmoving party to go beyond the
>    pleadings and by her own affidavits, or by the "depositions, answers
>    to interrogatories, and admissions on file," designate "specific facts
>    showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

                                    Analysis

In order to prevail on his claim, Plaintiff must establish that the defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at

837.  *See also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Defendants claim that Plaintiff never expressed a fear for his physical safety and if he had, he would have been moved to protective custody.  Defendant King admits that he interviewed Plaintiff, took his picture and stored the picture in the institutional Gang Intelligence office, but does not recall Plaintiff asking for assistance. Paper No. 18 at Ex. 1.   Lt. Coulbourne denies ever receiving any written or verbal communication from Plaintiff stating he feared for his safety.  *Id*. at Ex. 2.

Lt. Thorne admits that he spoke with Plaintiff on or about January 4, 2006, regarding his request to be moved to another housing unit.  *Id*. at Ex. 3.  Thorne claims he asked Plaintiff if he was in fear for his safety and he denied it.  *Id*.  Thorne further claims that Plaintiff was asked if he had a preference for a cell mate and was told any preference he had would be taken into account.  *Id*.  Thorne further admits that on February 2, 2006,  Plaintiff told him about Gaines' repeated requests for sexual favors which Plaintiff resisted.  *Id*.  Because Plaintiff did not claim that Gaines threatened him or touched him in any manner, Thorne states that he took no action.  *Id*.  Thorne alleges that he again advised Plaintiff that if there was anyone else he wanted to share a cell with, he would consider the request, but he did not receive anything from Plaintiff.  *Id*.  He explains that
Gaines was moved to another cell on March 3, 2006, because Gaines requested the move.  *Id*.  Defendants claim that the alleged attack by Inmate Jones on Plaintiff was never reported.  *Id*.

With respect to the April 23, 2006, assault on Plaintiff, Defendants claim the attack was investigated and appeared to be a spontaneous event.  According to the information received from Plaintiff about the assault, Plaintiff claimed he bumped into inmate Shawn Todd when gathering

6

his shower gear. Todd was then joined by several other inmates who participated in assaulting Plaintiff by beating him and stabbing him in the back. The inmates responsible for the assault were "DMI" gang members and were apprehended based on the information provided by Plaintiff. Subsequent to his cooperation with the investigation, Plaintiff was transferred to another prison and was informed that he would not be required to be near any of the inmates who assaulted him.

Plaintiff submits in opposition a copy of an Administrative Remedy Procedure Request form (ARP) in which he states, among other things, that he is being sexually harassed by inmates on the tier.[2]  Paper No. 20 at p. 7. The parties do not dispute that Plaintiff reported being sexually harassed by inmates. Defendants assert, and Plaintiff does not dispute, that Plaintiff never claimed that he feared for his safety or wanted to be assigned to protective custody. The statements Plaintiff made were not urgent in nature. Plaintiff was offered a chance to move to another cell to be shared with an inmate of his choosing, but he never made that request. Under the circumstances it was reasonable for Defendants to assume that Plaintiff did not require special protection from his cell mate or other inmates who were allegedly sexually harassing him.

There is no evidence in this case that indicates the sexual harassment Plaintiff experienced was related to the assault he actually suffered. Indeed, Plaintiff makes no allegation that his assailants on April 23, 2006, were motivated by his cell mate or another inmate who had sexually harassed him. The "danger" that was ignored by staff, according to Plaintiff, was the danger posed by his cell mate, but no harm came to him as a result of that particular threat. There is no

---

[2] The ARP mostly concerns obtaining another institutional job assignment. Paper No. 20 at p. 7. The request was rejected because it contained more than one complaint.

constitutional claim presented where, as here, correctional officials had no forewarning or reason to know that Plaintiff was at risk of being assaulted.  Defendants assert that the April 23, 2006, assault was a spontaneous attack which could not be predicted.  Plaintiff offers no evidence, nor does he forecast admissible evidence to dispute that allegation.  Defendants are entitled to summary judgment in their favor on this claim.

To the extent that Plaintiff raises a claim regarding his medical care, he has failed to describe how any of the Defendants named in this case have contributed to the alleged poor care.  He has also failed to state clearly why he is unhappy with the medical care received and, therefore, has failed to state a claim with regard to the medical care provided.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (requiring a showing of deliberate indifference to a serious medical need to state an Eighth Amendment claim).  Without evidence that Defendants failed promptly to provide Plaintiff with access to needed medical care, deliberately interfered the medical care provided, or tacitly authorized or were indifferent to constitutional violations by medical staff, no constitutional claim with respect to medical care is stated against these Defendants.  *See Miltier v. Beorn*, 896 F. 2d 848, 854 (4th Cir. 1990).  Defendants are therefore entitled to summary judgment in their favor on this claim.

A separate Order follows.

Date: May 14, 2007

/s/
Alexander Williams, Jr.
United States District Judge